Jorge Borges GONZALES *v.* STATE of Arkansas

CR 89-114                                     782 S.W.2d 359

Supreme Court of Arkansas
Opinion delivered January 8, 1990

*James R. Marschewski,* for appellant.

*Steve Clark,* Att'y Gen., by: *R.B. Friedlander,* Solicitor General, for appellee.

STEELE HAYS, Justice. At around three o'clock on the morning of August 4, 1988, the Zero Quickie Stop in Ft. Smith was robbed. The lone attendant, Ms. Patricia Chitwood, described the robber as a slender, white male, 5' 2" to 5' 5" tall, who spoke with a Spanish accent and wore a denim jacket and dark baseball cap. She said he held a sawed-off .22 caliber rifle in his left hand and carried a blue canvas bag in which she was instructed to place the cash register receipts. The robber told her if she gave his description to the police he would return and kill her. She reported the incident promptly and within a few hours

had identified Jorge Borges Gonzales from a group of mug shots.

A week later the same attendant noticed someone peering into the convenience store in a manner that aroused her suspicions. She called the police and Gonzales was apprehended near the store. A blue canvas bag was in his pants pocket and a sawed-off shotgun was found in his truck. Ms. Chitwood again identified Gonzales as the robber and testified at trial that the weapon and canvas bag were the same as those used in the robbery.

Gonzales was tried and convicted of aggravated robbery and criminal use of a prohibited weapon. He appeals from the judgment imposing concurrent sentences of forty and six years. Appellant's two points for reversal are unpersuasive and, accordingly, we affirm the judgment on the sentences.

I

The Trial Court Erred in Not Suppressing the
In-Court Identification of the Appellant.

Appellant moved to suppress an in-court identification by the attendant on the premise that the photographic line-up was tainted. This preliminary ruling by the trial court is on a mixed question of law and fact and will not be reversed unless clearly erroneous. *Cook* v. *State*, 283 Ark. 246, 675 S.W.2d 366 (1984). Whether an in-court identification meets constitutional standards is for the trial court, *Banks* v. *State*, 283 Ark. 284, 676 S.W.2d 459 (1984), and once admitted, the weight of the evidence is for the jury to determine. *Wilson* v. *State*, 282 Ark. 551, 669 S.W.2d 889 (1984).

We find nothing unduly suggestive in the photographic line-up. The witness was given five photographs of Cuban males bearing reasonable similarity to the appellant. Appellant's photograph was near the bottom of the stack. After making her selection, which was unequivocal, Ms. Chitwood was not told that she had chosen correctly and we find nothing to suggest that her selection was influenced in any manner.

Appellant argues, in effect, Ms. Chitwood chose him by a process of elimination, that by excluding two because they were too young, one because he was too dark and another because he appeared to be an Indian, she chose the only remaining possibil-

ity, the appellant. The argument is unconvincing, as a review of Ms. Chitwood's testimony in its entirety reflects that she was simply trying to be certain of her identification and to explain why she selected the appellant. While the absence of anything unduly suggestive in the identification process ordinarily ends the matter, *Maulding* v. *State*, 296 Ark. 378, 757 S.W.2d 916 (1988), it might be noted that Ms. Chitwood had an excellent opportunity to observe the robber in strong light, that her identification was firm and that she gave particulars to the police which fit the appellant in every material respect. There were minor discrepancies, to be sure — she described the weapon as a sawed-off .22 rifle, as opposed to a 410 shotgun, for example, but these were matters for the jury to resolve.

## II

The Trial Court Erred in Not Allowing the Appellant to Cross Examine the Victim by Use of a Voice Identification Test.

Defense counsel asked Ms. Chitwood if she thought she could identify the voice of the person who robbed her. Her response was that she didn't know whether she could or not. Asked if she would be willing to try, she answered, "I guess so, why not?" Counsel then asked permission to set up a screen and have the appellant and three Cuban males speak the words the perpetrator had used during the robbery to see whether the witness could identify appellant's voice. The trial court sustained an objection by the state.

The only authorities cited by appellant are two cases, *Hoback* v. *State*, 286 Ark. 153, 689 S.W.2d 569 (1985), and *Gustason* v. *State*, 267 Ark. 278, 590 S.W.2d 583 (1979), which support the general rule that a cross-examiner is given wide latitude in criminal cases. Appellant points out that the police commonly require individuals in a line-up to recite any words that the victim may have heard during a crime. True enough, but there was no showing that such methods were used in this case, nor anything to indicate that voice was a factor contributing to the selection of the appellant. At no time did Ms. Chitwood contend that any part of her identification of appellant was dependent upon his voice. In fact, when asked if she thought she could

102

identify appellant's voice her answer was, "I didn't know."

■ We have not previously considered whether voice identification procedures can be adapted to the courtroom, although we have held in a number of cases that it is within the sound discretion of the trial court to grant or refuse permission during trial to either party to conduct an experiment or test in the presence of the jury. *Kellensworth* v. *State*, 277 Ark. 238, 641 S.W.2d 699 (1982); *Rasmussen* v. *State*, 277 Ark. 238, 641 S.W.2d 699 (1982); *Edgemon* v. *State*, 275 Ark. 313, 630 S.W.2d 26 (1982). We see no reason to depart from that rule and cannot conclude, on the facts of this case, that it was an abuse of discretion by the trial court to deny the proposed demonstration. In *Bland* v. *State*, 89 S.W.2d 996 (1936), the Court of Criminal Appeals of Texas upheld the trial court's refusal to conduct voice identification tests during trial, even though the victims of a robbery identified the defendant by his voice as the masked gunman who robbed them.

AFFIRMED.

TURNER, J., not participating.