Robert COOK *v.* STATE of Arkansas

CR 94-658                                             894 S.W.2d 589

Supreme Court of Arkansas
Opinion delivered March 13, 1995

*McCullough Law Firm*, by: *R.S. McCullough*, and *Rita F. Bailey*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Acting Deputy Att'y Gen., and *Brenda Stewart*, Rule XV(E)(1)(b) Law Student, for appellee.

ROBERT L. BROWN, Justice. The appellant, Robert Cook, was charged with three separate deliveries of crack cocaine on October 8, 1992; on October 13, 1992; and on October 22, 1992. He was convicted of all three deliveries and sentenced to ten years in prison and fined $2,500 on the first count, sentenced to eleven years in prison and fined $5,000 on the second count, and sentenced to twelve years in prison and fined $7,500 on the third count, for a total of thirty-three years to be served and $15,000 in fines. This appeal raises the question of the chain of custody

for the crack cocaine allegedly purchased from the appellant Robert Cook. We find that Cook's arguments have no merit, and we affirm.

Cook specifically asserts that gaps in the chain of custody occurred with respect to the crack cocaine purchased on October 8, 1992. On that date, Paula Russell was working for the Conway Regional Drug Task Force. Russell met with Cook and was accompanied by a confidential informant, Helsey Credit. Prior to the meeting, Credit was patted down by a Conway police officer, Joe Martinez, to make certain he had no drugs in his possession. Russell pulled her car up beside Cook's car with the driver's side of her car next to the passenger side of Cook's car. She gave Credit $40 in cash for the drug buy. Credit exited her vehicle and approached the passenger side of Cook's vehicle. Cook's car door was open. Russell watched as Credit handed the money to Cook who then reached down below his car seat, retrieved an object, and gave it to Credit who, in turn, passed it through the car window to Russell. Russell subsequently delivered the object to the Arkansas State Crime Laboratory for analysis where it proved to be two rocks of crack cocaine.

At the trial of the three charges, confidential informant Helsey Credit was not present to testify for the State. During Paula Russell's testimony, counsel for Cook objected to any testimony about the purchase on October 8, 1992, on the basis that the absence of Credit caused a break in the chain of custody. Defense counsel contended that without Credit the State no longer had evidence of a hand-to-hand buy because the alleged crack cocaine, according to the prosecutor, passed from Cook to Credit to Russell. The trial court overruled the objection, and Russell proceeded to describe the drug purchase that transpired on October 8, 1992.

Later on in Russell's testimony, defense counsel objected once again to the cocaine buy allegedly made on October 8, 1992, due to the absence of testimony as to how the substance was returned to the Drug Task Force following State Crime Lab analysis. The trial court suggested introduction of the crack cocaine subject to the prosecutor later completing the chain of custody, and defense counsel agreed.

There was no specific proof establishing how the crack

cocaine was transferred from the State Crime Lab to Paula Russell after testing. Roy V. Adams, Jr., a chemist with the State Crime Lab, testified, however, about standard procedures followed by Crime Lab drug chemists for evidence received for analysis. He stated that when the lab receives a substance, it logs it in by giving the matter a crime lab number and by entering the date of receipt. When the drug chemists do their tests, they check out the substance and mark down the lab number and place the date and their initials on the package containing the substance. They also put the date on the package when it is resealed. After testing, the evidence is returned to the Drug Task Force either by personal pick-up or by United Parcel Service. Earlier, Susan Wilson, an investigator with the Conway Police Department, had testified that evidence is usually returned from the State Crime Lab to the Police Department by UPS. After Roy Adams testified to these procedures, this colloquy took place regarding the crack cocaine allegedly purchased by Cook on the three occasions:

> PROSECUTOR: Your honor, at this time, I'd ask the Court to rule that the chain of evidence is complete on State's Exhibits 1, 2, and 3, and will seek their final admission at this time.

> DEFENSE COUNSEL: No objection.

> THE COURT: All right. They will be received at this time.

Cook later testified on his own behalf and denied participation in any of the three episodes.

Cook's lone point on appeal relates to two asserted breaks in the chain of custody concerning Exhibit 1 which was the substance purchased on October 8, 1992: (1) the absence of Helsey Credit at trial, who received the substance on that date; and (2) the failure to establish a custodial link between the State Crime Laboratory and the Conway Drug Task Force for any of the three purchases.

■ We decline to address this issue because it is clear from the colloquy quoted above that Cook abandoned his objections with respect to chain of custody and permitted the exhibits to be introduced into evidence without objection. We have made

it clear that an objection to chain of custody must be made at the time the substance is moved into evidence. *Pryor* v. *State*, 314 Ark. 212, 861 S.W.2d 544 (1993); *Dixon* v. *State*, 310 Ark. 460, 839 S.W.2d 173 (1992). We can only speculate then as to why Cook decided not to pursue his arguments made during the testimony of Paula Russell. The fact is that the defense counsel advised the trial court during the drug chemist's testimony when the three exhibits of crack cocaine were offered for "final admission" into evidence that he had "no objection" to their admissibility. Thus, no effort was made by defense counsel to preserve his previous objections, and the trial court admitted the exhibits without objection. This being the case, the matter stands as if no objection had ever been made. *See Bates* v. *State*, 271 Ark. 699, 610 S.W.2d 257 (1981).

Affirmed.