Michael Drew KENNEDY *v.* STATE of Arkansas

CA CR 99-1087                                    27 S.W.3d 467

Court of Appeals of Arkansas
Division I
Opinion delivered October 11, 2000
[Petition for rehearing denied November 15, 2000.*]

---

* HART, J., would grant.

*Kenneth G. Fuchs*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Sandy Moll*, Ass't Att'y Gen., for appellee.

MARGARET MEADS, Judge. Appellant, Michael Drew Kennedy, was found guilty by a jury of the crime of first-degree battery. He was sentenced to serve ten years in the Arkansas Department of Correction. In this appeal he does not challenge the sufficiency of the evidence, but argues only that the trial court erred when it allowed a statement given by an eyewitness, Kimberly Kennedy, to be read into evidence by Officer Ross Dean, who took the statement.

At about 2:30 a.m. on July 27, 1997, some arm wrestling took place inside the 659 Club in Choctaw, Arkansas. Later a fight occurred outside the club during which Lanny Bates was seriously cut by a knife allegedly used by appellant. There were a number of eyewitnesses to the incident, several of whom were related to each other and to appellant. Appellant asserted the justification of self defense, and much of the testimony centered around the fact that Bates somehow started the fight.

At trial, Ms. Kennedy, who is married to appellant's first cousin, testified that she made a statement to the police shortly after the incident, and that she had reviewed it. However, she said that

she could remember few details of what was in the statement. In the statement, Ms. Kennedy said that she saw a knife in appellant's hand, but on direct examination she said that she couldn't remember whether she saw a knife during the fight and didn't remember telling the officer that she saw appellant with a knife in his hand. The State then called Officer Dean, who testified concerning the statement that he took from Ms. Kennedy. Appellant objected, arguing that Officer Dean's testimony was hearsay and that the statement was not a prior inconsistent statement. The trial court found that the statement to Officer Dean was an inconsistent statement and allowed the officer to testify about what Ms. Kennedy told him; it did not allow the statement itself to be admitted into evidence.

On appeal, appellant contends that the trial court erred by allowing the officer to read Ms. Kennedy's statement to the jury as a prior inconsistent statement. He argues that the statement was not inconsistent, but was a "no recall." Appellant also contends that the statement was admitted as substantive evidence against him. The State contends that *Chisum v. State*, 273 Ark. 1, 616 S.W.2d 728 (1981), is directly on point and controlling in this appeal. We agree.

In *Chisum*, the witness, appellant's sister, professed to have forgotten what she told the sheriff concerning the shooting death of a Mr. Rackley; in her testimony, she testified to nothing unfavorable to appellant, and she could not remember any of her statements to the sheriff that implicated appellant. The trial court allowed the sheriff and his secretary to narrate the statement made by the witness, and our supreme court ruled that this evidence was properly admissible despite the witness's professed lack of memory, relying upon the following reasoning from *Billings v. State*, 52 Ark. 303, 12 S.W. 574 (1889):

> The statute does not place the right to impeach a witness by proof of contradictory statements, upon the condition of his denial. It requires his cross-examination upon the matter; nothing more. This is exacted in order that he may explain apparent contradictions and reconcile seeming conflicts and inconsistencies. If he cannot remember the fact, he is unable to do what the law affords him the opportunity to do. If he cannot remember the statement made, it is quite as probable that his recollection of the occurrence about which he testifies is inaccurate or incorrect. If contradiction properly affects the value of his testimony when he

denies, it is difficult to see why it should not when he ignores the contradictory or inconsistent statements. The testimony is discredited because he affirms today what he denied yesterday; the legitimate effect of such contradiction cannot depend upon his power to remember it. If the defect in the memory is real, the proof of the contradiction apprises the jury of this infirmity of the witness; if he has made a false statement under the pretense of not remembering, he should not escape contradiction and exposure. We think the evidence was properly admitted.

273 Ark. at 8, 616 S.W.2d at 731.

■ In *Chisum,* *supra,* the defense objected to the proferred statements on hearsay grounds, and the trial court admitted the statements, finding that they were admissible for impeachment as inconsistent out-of-court statements. Likewise, in the instant case, appellant objected to the statements on hearsay grounds, and the trial court found that Ms. Kennedy's statement was an inconsistent statement. Therefore, based on *Chisum,* we cannot say that the trial court erred in allowing Officer Dean to read Ms. Kennedy's statement to the jury.[1]

■ In regard to appellant's argument that the statement was admitted as substantive evidence against her, appellant never asked for a limiting instruction stating that the prior statement was for impeachment purposes only. When evidence is admissible for one purpose but not for another, an objection is wholly unavailing unless the objecting party asks the court to limit the evidence to its admissible purpose. *Chisum, supra.* Thus, appellant's argument that Ms. Kennedy's statement was hearsay but was used as substantive evidence by the prosecutor is to no avail because he failed to seek a limiting instruction.

Affirmed.

CRABTREE, JENNINGS, and PITTMAN, JJ., agree.

ROAF and HART, JJ., dissent.

ANDREE LAYTON ROAF, Judge, dissenting. I do not agree that *Chisum v. State,* 273 Ark. 1, 616 S.W.2d 728 (1981),

---

[1] Although the dissent states that *Chisum* has been limited, we simply note that it has not been overruled.

provides a basis for admission of Kimberly's unsworn statement to police into evidence, and would reverse and remand for a new trial. Furthermore, I do not agree with the State that Kennedy's failure to ask for a limiting instruction bars him from challenging on appeal the State's use of this statement as substantive evidence, as was surely done in this case. I also reject the State's contention that admission of this evidence was harmless error.

An unsworn prior statement made by a witness cannot be introduced as substantive evidence in a criminal case to prove the truth of the matter asserted therein. Ark. R. Evid. 801(d)(1)(i); *Smith v. State,* 279 Ark. 68, 648 S.W.2d 490 (1983). However, Rule 613 of the Arkansas Rules of Evidence permits extrinsic evidence of prior inconsistent statements of a witness to be introduced for the purpose of impeachment only if the witness is afforded the opportunity to explain or deny the statement, and does not admit having made it, and the other party is afforded the opportunity to interrogate the witness on that statement. *See Byrd v. State,* 337 Ark. 413, 992 S.W.2d 759 (1999). If the witness, however, admits making the prior inconsistent statement, then extrinsic evidence of that statement is not admissible. *Id.*

The instant case is not one where the existence of the prior inconsistent statement needed to be proved extrinsically; Kimberly admitted making the statement to police. Moreover, she admitted that her testimony at trial was different from what she told Investigator Dean. Accordingly, it was error to have the statement read, if the only purpose was to prove its existence. *See Gross v. State,* 8 Ark. App. 241, 650 S.W.2d 603 (1983).

Even if this court can find that Kimberly in essence denied making the statement, the way that the trial court allowed the statement to be admitted into evidence was clearly an abuse of discretion. The way the statement was used in and of itself can constitute reversible error. Although *Chisum v. State, supra,* suggests that reading a narrative of a prior inconsistent statement might be admissible for impeachment purposes, that holding was subsequently limited by *Smith v. State, supra,* and its progeny. In *Smith,* the very fact that a prior inconsistent statement was read in its entirety to the jury, treated as substantive evidence in argument by trial counsel, and provided the factual predicate for a jury instruction on accomplice testimony, convinced the supreme court that

the statement was impermissibly used as substantive evidence and not merely for impeachment. Apparently, this error can be recognized regardless of whether or not the appellant asked for a limiting instruction. *Gross v. State, supra; see also Hinzman v. State,* 53 Ark. App. 256, 922 S.W.2d 725 (1996) (holding use of a prior inconsistent statement in a way that "exceeded the parameters of proper impeachment" constituted reversible error). By comparison, where the statement is used more circumspectly, despite its obvious substantive content, the information contained within the statement is admissible. *See Roseby v. State,* 329 Ark. 554, 953 S.W.2d 32 (1997) (*overruled by Mackintrush v. State,* 334 Ark. 390, 978 S.W.2d 293 (1998) on other grounds) (affirming where witness was only questioned about prior statements that she claimed not to remember); *see also Hughey v. State,* 310 Ark. 721, 840 S.W.2d 183 (1992); *Gross v. State, supra.* Here, by having a police officer read it to the jury and by using it as substantive evidence in its closing argument[1], the State used Kimberly's statement to police in precisely the manner that was proscribed by *Smith v. State, supra.*

Also unavailing is the State's contention that Kennedy's failure to request a limiting instruction should be fatal to this point on appeal. This argument relies on part of the holding in *Chisum v. State, supra,* that has subsequently been limited by *Smith v. State, supra,* and *Hinzman v. State, supra.* In both *Smith* and *Hinzman,* the failure to request or accept a limiting instruction was of no moment. Conversely, when the use of a prior inconsistent statement is proper, the court's giving of a limiting instruction can be pivotal in preserving the issue for appeal. *See Roseby v. State, supra.* Because the use of Kimberly's statement to police went beyond

---

[1] In closing arguments, the State treated Kimberly's statement as if it were substantive evidence. Regarding a key issue of whether Kennedy was armed with a knife when Bates was not, the prosecutor stated: "Kimberly Kennedy, in her statement to police said she saw Michael Drew Kennedy with a knife in his right hand and hitting Lanny Bates in the face. The next time she saw the knife, it was in Michael Drew Kennedy's left hand. Kimberly Kennedy saw Michael Drew Kennedy with a knife." Later the prosecutor stated: "Kimberly Kennedy gave a very detailed statement to the police on August 4, 1997, which was a week after this incident. She had seven days to calm down and think about it. She saw a knife in Michael's right hand and in the left hand. She saw Lanny fall. She saw her husband pull Michael off Lanny and take him to the truck. Kimberly saw Michael hit Lanny first. That was her statement. The first blow Kimberly talked about was Michael striking Lanny in the face. That's what she said." The State also told the jury that they should "believe" Kimberly's statement because, as a person with a hearing impairment, she was "more perceptive" and a better "observer."

impeachment and was so far from being permissible, the failure to request a limiting instruction is of no consequence.

Finally, even though it was obvious error for the trial court to allow the State to have Investigator Dean read Kimberly's statement into evidence, this trial error is still subject to harmless-error analysis, and the case cannot be reversed absent a demonstration of prejudice. *See Byrd v. State, supra.* Clearly, prejudice has been demonstrated here. While it is true that there is overwhelming evidence that Kennedy slashed Bates, this fact is not conclusive of whether or not Kennedy can prove prejudice. From *voir dire* onward, Kennedy made it clear to the jury that he planned to assert self-defense as his theory of the case. Accordingly, except for his directed-verdict motion in which Kennedy argued that there was no proof that he had a knife in his possession, Kennedy stuck with this defense. Moreover, the fact that Kennedy does not argue sufficiency of the evidence renders the possession of the knife a nonissue for this appeal. The true issue for determining prejudice was and remains whether Bates or Kennedy was the aggressor and whether Kennedy's use of force was justified.

Kennedy also contends that he was denied the right to cross-examine his accuser when Investigator Dean simply read the statement. As noted above, the prosecution argued in closing arguments that Kimberly's statement established that Kennedy threw the first punch. I cannot agree that this fact was conclusively proven by Kimberly's statement, which was ambiguous on this point. Obviously it begged clarification on cross-examination. Without Kimberly's statement being used as substantive evidence, the only evidence that Kennedy was the aggressor would have come from Bates's testimony, and Bates was impeached by his financial motive, his five-million-dollar lawsuit pending against Kennedy, and the fact that he was intoxicated. Moreover, Bates's testimony was disputed by a host of defense witnesses who all claimed that Bates was the aggressor. Because Kennedy was so clearly prejudiced by the way in which Kimberly's unsworn statement was used, I would reverse and remand for a new trial.

HART, J., joins.